# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 4, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MIRANDA L.,**
**Respondent Below, Petitioner**

**v.) No. 25-ICA-244**   (Fam. Ct. Marion Cnty. Case No. FC-24-2024-D-297)

**MICHAEL L.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Miranda L. ("Mother")[1] appeals the Family Court of Marion County's May 15, 2025, order granting Respondent Michael L. ("Father") 50-50 parenting time after the completion of a phased-in period. Father responded in support of the family court's decision.[2] Mother filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mother and Father were married on December 10, 2010. They share two children, born in 2011 and 2017. The parties last cohabited on or about April 10, 2024. Events leading to this appeal began when Mother filed a domestic violence petition ("DVP") on May 3, 2024, in Harrison County, West Virginia alleging that Father had threatened to kill her in 2023, and that she and the children had to hide in the oldest child's bedroom. Mother alleged that after the incident in 2023, she left with the children for a few days, but the abuse continued when she returned home. She left home again in April 2024, after Father allegedly threatened to shoot at the car with Mother and the children inside. Mother further alleged that Father was abusing drugs and had been diagnosed with Huntington's Disease, which affected him physically and mentally. The Family Court of Harrison County conducted a hearing on Mother's DVP on May 17, 2024. At that hearing, the court granted

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is represented by Kimberly M. Kosloski, Esq. Father is self-represented.

mother a domestic violence protective order ("DVPO") for ninety days, and Father was granted supervised visitation with the children that was to occur at a third-party facility.

On May 20, 2024, three days after the entry of the DVPO, Father left Mother a voicemail saying "yeah I am ready to just say f--- it and go kill everybody" because he had to pay $40 per hour to visit the children at the third-party facility. After the phone call, Mother filed a petition to modify the DVPO. The family court held a hearing on Mother's petition to modify on June 7, 2024, and the court entered an order modifying the DVPO on June 14, 2024, extending it to one year, to the expiration date of June 7, 2025. The court suspended Father's parenting time throughout the duration of the DVPO, and ordered Father to enroll in domestic violence and anger programs at the Harrison County Day Report. Father appealed this order to the Circuit Court of Harrison County. The circuit court denied Father's appeal by order entered July 18, 2024.

Father filed a petition for divorce on December 19, 2024, in the Family Court of Marion County, West Virginia. In his petition, he alleged that he provided caretaking functions for the children prior to the parties' separation and that Mother became addicted to drugs and alcohol after the parties' separation. Father requested spousal support and 50-50 parenting. On January 28, 2025, Mother filed an answer and counter-petition, requesting sole custody of the children due to Father's alleged domestic violence and drug abuse.

On February 4, 2025, the parties appeared before the family court for a temporary hearing on Father's petition and Mother's counter-petition. By temporary order entered February 5, 2025, the family court found that Father had completed his court-ordered domestic violence and anger programs. The court also found that Father had been diagnosed with Huntington's Disease in 2015, which can cause a lack of impulse control, and that he had a life expectancy of fifteen to twenty years after the onset of symptoms. The court further found that Father provided much of the children's care before the domestic violence incident. Based on those findings, the family court granted Father a fifteen-minute phone call with the children on Tuesdays and Fridays, with Mother having the right to listen and/or to terminate the calls if the children became afraid. If the phone calls were successful for four weeks, the court ordered that phone calls could be converted to video calls.

The family court conducted the final hearing on May 6, 2025. During this hearing, Father testified that he was deemed totally disabled in 2015. He further testified that he suffered a back injury in 2000, had back surgery in 2002, and that his doctor had weaned him from pain medication too quickly. He further testified that he did not use opioid medication for two years, but eventually he had to take such medication to manage his pain. Father testified that during the marriage, he cared for the children while Mother worked and that before the parties' separation, he was informed that Wife was having an affair with her boss, which contributed to his anger. Father presented multiple witnesses who testified on his behalf, including a witness who testified that the phone call that led to

the issuance of the DVPO was a "pocket dial" and Father's threat to "kill everybody" was directed towards the witness, not towards Wife. Two other witnesses testified on Father's behalf that they had never seen Father angry. The family court found Father's "pocket dial" explanation to be credible.

Mother, in contrast, testified that she was subjected to domestic violence from the time the parties married and that, although she worked nights, she still provided most of the children's care. Mother argued that Father should continue to have supervised visits at a third-party facility and that she would pay for them. By order entered May 15, 2025, the family court made the following findings of fact and conclusions of law:

- Both parties provided care for the children as their schedule permitted.
- Mother's domestic violence petition did not come about until Mother's boss's spouse contacted Father to inform him that Mother was having an affair with her boss and Father confronted Mother about it. Mother's denial of the affair was found not credible.
- Father's health is good considering his diagnosis.
- Father's efforts to attend counseling lessened the DVPO's impact.
- It was in the children's best interest to implement a graduated parenting plan until the parties reached 50-50 parenting.
- Mother had been alone with Father behind closed doors before she filed the domestic violence petition. A permanent restraining order was not warranted. The Harrison County Family Court did not have all the information before it when it extended the DVPO.
- Mother was designated as the primary residential parent.
- Father was granted parenting time for two hours, two times per week at a third-party facility for two weeks. Following the two weeks, Father was granted parenting time for four hours, twice weekly for three weeks. Beginning on week six, Father was granted parenting time on Saturdays from 9:00 a.m. until 6:00 p.m. every Saturday for four weeks with the third-party facility randomly dropping in. Beginning week ten, Father was granted unsupervised visits from 9:00 a.m. until 9:00 p.m. for three weeks. On week thirteen, Father was granted parenting time from Saturday at 9:00 a.m. until Sunday at 6:00 p.m. for four weeks. Beginning week seventeen, the parties were granted a week-on/week-off parenting schedule. Wife was ordered to pay for all supervised visits.
- Father's holiday schedule was adopted.
- The parties were granted joint decision-making responsibility.

The family court entered an amended final order on May 16, 2025, from which Mother now appeals.

3

For these matters, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother raises three assignments of error. Because her assignments of error are similar, we will consolidate them. *See generally Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly").

Mother asserts that the family court did not properly address Father's diagnosis of Huntington's Disease or his history of domestic violence and did not to provide adequate safeguards for the children during the phase-in parenting period with Father or once the parenting plan reached 50-50. In doing so, Mother contends that the court's parenting plan is not in the children's best interest. We disagree.

West Virginia Code § 48-9-209 (2024) provides a non-exclusive list of limiting factors that a family court must consider when implementing a parenting plan. Two of those considerations include whether a parent has committed domestic violence and whether a parent has a chronic illness that renders that parent unable to provide proper care for children.[3] Upon a court's finding that a parent has engaged in domestic violence, West Virginia Code § 48-9-209(b) states, "the court shall impose limits that are reasonably calculated to protect the child [. . .] from harm." This section further provides several options to protect children, such as supervised parenting time, exchange of the children in a protected setting, restraints on the guilty parent in their communication with the children, denial of overnight visits, and a requirement that the guilty parent complete a domestic violence intervention program.

In this matter, Harrison County Family Court ordered Father to complete domestic violence and anger programs, granted him supervised parenting time at a third-party facility, and ordered Father to have no physical contact with the children for almost one year. During that time, Father completed his court-ordered domestic violence and anger programs, and the family court granted limited supervised telephone and video calls with the children. Regarding Father's Huntington's Disease, the family court assessed Father's

---

[3] See W. Va. Code § 48-9-209(a)(3) and § 48-9-209(f)(3)(C).

4

physical condition and found that Father was in good health considering his diagnosis. Therefore, we conclude that the family court *did* sufficiently address the issues of Father's domestic violence and his having Huntington's Disease and the family court applied limits reasonably calculated to protect the children from harm.

Mother's contention that the parenting plan is not in the children's best interest also lacks merit. West Virginia Code § 48-9-102a (2022) states as follows:

> There shall be a presumption, rebuttable by a preponderance of the evidence, that equal (50-50) custodial allocation is in the best interest of the child. If the presumption is rebutted, the court shall, absent an agreement between the parents as to all matters related to custodial allocation, construct a parenting time schedule which maximizes the time each parent has with the child and is consistent with ensuring the child's welfare.

Here, after weighing the above-cited limiting factors and determining that Father was not a threat to the children, the family court implemented a phased-in parenting plan which was designed to ensure the children's welfare, and also took steps to maximize each parent's parenting time, as required by West Virginia Code § 48-9-102a. Therefore, we conclude that the family court did not err or abuse its discretion in this matter.

Accordingly, we affirm the family court's May 15, 2025, order.

Affirmed.

**ISSUED:** December 4, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

5